IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CARLOS CAREY, #245 045, | ) | |
| #276 260, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CIVIL ACTION NO.:  2:13-CV-705-MHT |
| | ) | [WO] |
| WARDEN RENE MASON, *et al.*, | ) | |
| | ) | |
|     Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Plaintiff, a state inmate incarcerated at the Easterling Correctional Facility in Clio, Alabama, challenges the constitutionality of actions taken against him during his incarceration at the Bullock Correctional Facility ["Bullock"] in 2013.[1]  He alleges that on August 22, 2013, he was subjected to excessive force. He also complains that he was denied adequate medical care for injuries sustained during the use of force incident, that a conspiracy to harm him and to cover up the assault existed, and that various items of personal property were confiscated and/or destroyed. Plaintiff names as defendants Warden Rene Mason, Sergeant Dominic Whitley, Officer Clevon Randolph, former Commissioner Kim Thomas, Officer C. King, Captain Jenkins, Lieutenant Aundra Jackson (the "correctional defendants"), Dr. Tahir Siddiq, and Nurse L. Moore (the "medical defendants"). Plaintiff seeks injunctive and declaratory relief,

---

[1] During the pendency of this action, Plaintiff was transferred from Bullock to another correctional facility in Alabama.

installation of cameras in state correctional facilities, an FBI investigation regarding use of force at Bullock, and damages. Plaintiff requests trial by jury.[2]  Doc. #s 1, 3, 43.

Defendants filed special reports and supporting evidentiary materials addressing Plaintiff's claims for relief. In these documents, Defendants deny they acted in violation of Plaintiff's constitutional rights. The medical defendants also argue Plaintiff's complaint against them is due to be dismissed because, prior to filing this cause of action, Plaintiff failed to properly exhaust an administrative remedy available to him through the prison system's medical care provider, Corizon, Inc. Doc. #s 23, 66. The medical defendants base their exhaustion defense on Plaintiff's failure to follow the available required administrative procedures at Bullock regarding the claims presented. *Id*. In addition, the medical defendants maintain—and the evidentiary materials, including Plaintiff's medical records, indicate—that Plaintiff received appropriate medical treatment during the time relevant to the matters alleged in the complaint and amendment thereto. Doc. # 23, Siddiq Affidavit, Exh. A; Doc. # 66, Moore Affidavit.

The court provided Plaintiff an opportunity to file a response to Defendants' special reports in which he was advised, among other things, to "specifically address the medical defendants' argument that he [] failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA")." Doc. # 39 at 1 (footnote omitted); Doc. # 68 at 1 (footnote omitted). The order advised Plaintiff his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. # 39 at 3; Doc. # 68 at 3. This order further cautioned Plaintiff that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, the court

---

[2] In accordance with the prior orders, opinions, and proceedings in this matter, the court, on Plaintiff's motion, dismissed his claims against Defendant Boyd and his due process claims challenging disciplinaries he received on August 23, 2013. *See* Doc. #s 17, 20, 30, 78, 79.

may at any time [after expiration of the time for his filing a response to this order] and without further notice to the parties (1) treat the special reports and any supporting evidentiary materials as a [dispositive] motion . . . and (2) after considering any response as allowed by this order, rule on the motion in accordance with law."  Doc. # 39 at 3-4; Doc. # 68 at 4. Plaintiff responded to Defendants' reports.[3] *See* Doc. #s 49, 50, 71, 72, 76.

The court deems it appropriate to treat the correctional Defendants' reports as a motion for summary judgment. The court will treat the medical Defendants' special reports as a motion to dismiss regarding the exhaustion defense. *Bryant v. Rich*, 530 F.3d 1368, 1374-1375 (11th Cir. 2008) (internal quotations omitted) ("[A]n exhaustion defense ... is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *see also Trias v. Florida Dep't of Corr.*, 587 F. App'x 531, 534 (11th Cir. 2014) (District court properly construed defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies...."). This case is now pending on Defendants' dispositive motions.

## I.  STANDARD OF REVIEW

### A. Exhaustion

In addressing the requirements of 42 U.S.C. § 1997e about exhaustion, the Eleventh Circuit has

> recognized that "[t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting *Freeman v. Francis*, 196 F.3d 641, 643-44 (6th Cir. 1999)). This means that "until such administrative remedies

---

[3] Any broadening or expansion of Plaintiff's claims in his opposition to Defendants' dispositive motions to include other distinct constitutional claims and/or additional claims for relief is not properly before the court. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend h[is] complaint through argument in a brief opposing summary judgment.").

as are available are exhausted," a prisoner is precluded from filing suit in federal court. *See id.* (affirming dismissal of prisoner's civil rights suit for failure to satisfy the mandatory exhaustion requirements of the PLRA); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) ("reaffirm[ing] that section 1997e(a) imposes a mandatory requirement on prisoners seeking judicial relief to exhaust their administrative remedies" before filing suit in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding that under the PLRA's amendments to § 1997e(a), "[a]n inmate incarcerated in a state prison ... must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983"); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of prisoner's civil suit for failure to satisfy the mandatory exhaustion requirements of § 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under § 1997e(a) for failure to exhaust administrative remedies prior to filing suit in federal court).

*Leal v. Georgia Dep't of Corr.*, 254 F.3d 1276, 1279 (11th Cir. 2001). The Court has, therefore, determined that "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). Because exhaustion is mandated by the statute, [a court has] no discretion to waive this requirement. *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998)." *Myles v. Miami-Dade Cty. Corr. and Rehab. Dep't*, 476 F. App'x 364, 366 (11th Cir. 2012). The court will "resolve this issue first." *Id.*

"When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. 'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.' *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*citing Bryant*, 530 F.3d at 1373–74). If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.' *Id.* (*citing Bryant*, 530 F.3d at

1373-74, 1376).” *Myles*, 476 F. App’x at 366.  A district court “may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing].  *See* [*Turner*, 541 F.3d at 1082].  The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record.  *Bryant*, 530 F.3d at 1376.” *Trias*, 587 F. App’x at 535.

### B. Summary Judgment

“Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.” *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*); Fed. R. Civ. P. 56(a) (“The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.”).   The party moving for summary judgment “always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact.” *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

The correctional Defendants have met their evidentiary burden.  Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991);

*Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II.  DISCUSSION

### A. Injunctive Relief

Plaintiff requests declaratory and injunctive relief against Defendants. Plaintiff is no longer incarcerated at Bullock.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if

unaccompanied by any continuing present injury or real and immediate threat of repeated injury).

As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated

at Bullock, his request for equitable relief has been rendered moot.

### B. The Medical Defendants

### i. Exhaustion

Plaintiff challenges the provision of medical care he received while incarcerated at Bullock.

Doc. #s 1, 43. In response to the complaint and amendments thereto, the medical Defendants assert

this case may be dismissed because Plaintiff did not exhaust properly the administrative remedy

provided by the institutional medical care provider prior to filing this complaint as required by the

Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  Doc. #s 23, 66. As explained, federal law

directs this court to treat the medical Defendants' responses as a motion to dismiss for failure to

exhaust an administrative remedy and allows the court to look beyond the pleadings to relevant

evidentiary materials in deciding the issue of proper exhaustion. *Bryant*, 530 F.3d at 1375.

The PLRA compels exhaustion of available administrative remedies before a prisoner can

seek relief in federal court on a § 1983 complaint.  Specifically, 42 U.S.C. § 1997e(a) states that

"[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted." "Congress has provided in §

1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered

through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he

PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve

general circumstances or particular episodes, and whether they allege excessive force or some

other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Exhaustion of all available

administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander*, 159 F.3d at 1325; *Woodford v. Ngo*, 548 U.S. 81 (2006). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Id*. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings.... Construing § 1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id*. at 90-91, 93. The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement ... by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to her. *Id*. at 83-84; *Bryant,* 530 F.3d at 1378 (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'")); *Johnson*, 418 F.3d at 1157 (inmate who files an untimely grievance or spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom*, 223 F.3d at 1261 (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*).

It is undisputed that the Alabama Department of Corrections ["ADOC"] provides an administrative remedy procedure for inmate complaints regarding their medical care and treatment in the form of an inmate grievance procedure. Upon arriving at a facility operated by the ADOC, inmates are made aware of the procedures and processes for obtaining medical care and treatment. The medical units within the state correctional facilities generally rely upon the same procedures for: 1) obtaining emergency and non-emergency medical treatment; 2) conducting chronic care clinics; 3) administering medication; 4) conducting segregation sick call; and 5) providing and administering an administrative grievance process relating to the provision of an inmate's healthcare. As part of the medical staff's orientation of inmates, inmates are provided a form entitled "ACCESS TO HEALTHCARE SERVICES." Plaintiff acknowledged in writing his understanding of these processes and procedures on several occasions during the course of his incarceration including on August 22, 2013, when he was processed into Bullock. Doc. # 23, Exh. A at 5-15.

To support their motion to dismiss for failure to exhaust administrative remedies, the medical defendants attach the affidavit of Defendant Siddiq who affirms that Bullock has a grievance procedure for inmate complaints related to the provision of medical treatment at the facility. The grievance process is initiated when an inmate submits a medical grievance form to the Health Services Administrator ["HSA"] through the institutional mail system. Medical grievance forms are available from the correctional officers at Bullock. Inmates are instructed to place completed medical grievance forms in the sick call boxes located throughout the facility. When received in the Health Care Unit, medical grievance forms are sent to the HSA by the medical records clerk or administrative assistant. The HSA reviews the grievances daily, provides a written response within five days at the bottom of the form, and returns a copy of the completed

forms to the inmate. The form also advises an inmate that if he wishes to appeal a grievance response the inmate may file a grievance appeal and return the completed form to the attention of the HSA, place the form in the sick call request box, or give the form to the segregation sick call nurse during rounds. Written responses to medical grievance appeals are provided within five days of receipt. Doc. # 23, Siddiq Affidavit & Exh. A.

The record establishes that Bullock provides an administrative remedy procedure for inmate medical complaints which is available to all inmates, including Plaintiff, during his confinement at Bullock during the relevant time period. Plaintiff does not challenge the availability of a grievance procedure at Bullock. The medical defendants affirm that during the time Plaintiff was incarcerated at Bullock, he filed no medical grievance and/or medical grievance appeal regarding his medical care and treatment at the facility as alleged in the complaint and/or amendments thereto prior to initiating this lawsuit. Doc. # 23, Siddiq Affidavit & Exh. A.

The court granted Plaintiff an opportunity to respond to the exhaustion defense raised by the medical defendants in their motions to dismiss. Doc. # 39, 68. He argues he put forth a good faith effort to exhaust all remedies regarding the medical grievance system at Bullock and has submitted copies of four grievances he maintains he submitted during his incarceration at the facility. Doc. # 49, 71.[4] Plaintiff also submitted affidavits from other inmates to support his opposition. Inmate Alexander states in his affidavit that Plaintiff tried to give Dr. Siddiq and nurses grievances but they would not accept them and/or respond to them. Doc. # 50 at 4-5. Although Plaintiff's and Defendants' allegations conflict, Plaintiff's allegation that he attempted to exhaust

---

[4] A review of the grievance forms submitted by Plaintiff reflect that none of them contain a response or signature from medical staff and two of the grievances pre-date Plaintiff's arrival at Bullock. Doc. # 49 at 4-6; Doc. #71 at 3.

administrative remedies is assumed to be true for purposes of this Recommendation. *Turner v. Burnside, supra.*

The court turns to the second *Turner* step where the medical Defendants bear the burden of establishing a lack of exhaustion. The medical defendants' evidence establishes that the health care unit at Bullock provides a procedure for inmates who wish to submit a grievance regarding medical treatment and care sought and/or provided. Inmate grievance forms are available to inmates at Bullock to submit a grievance related to the provision of health care, inmate grievances are answered within a designated time frame, and the inmate grievance form provides information about how an inmate may appeal the response he receives to his initial inmate grievance. Plaintiff's evidence has not successfully rebutted this showing that a grievance process was available at Bullock during the time of his incarceration. Plaintiff's assertion that he attempted to exhaust available administrative remedies fails to overcome Defendants' evidence showing that a grievance system was available at the institution for Plaintiff's claims and that he failed to exhaust properly the administrative remedy available to him. *See Woodford*, 548 U.S. 84-851 (to exhaust administrative remedies, an inmate must comply with all steps prescribed by the prison's grievance system); *Bryant,* 530 F.3d at 1378 (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'")); *see also Brewington v. Daniels*, 2012 WL 6005780, at *4-5  (M.D. Ala. 2012) (inmate's conclusory assertion he complied with grievance procedures but medical staff failed to timely respond to his initial medical grievance insufficient to overcome Defendants' evidence showing that a grievance system was available for Plaintiff's claims); *Maclary v. Carroll*, 142 F. App'x 618, 620 (3d Cir. 2005) (inmate's unsupported conclusory allegations he filed grievances which went unanswered and unprocessed

11

were insufficient to overcome defendants' evidence he failed to exhaust available administrate remedies).

The court has carefully reviewed the pleadings, documents, and records filed and finds that Plaintiff has failed to make a colorable showing he exhausted properly his administrative remedies and/or demonstrated that he was denied access to those administrative remedy procedures. The undersigned finds there is no dispute of material fact that Plaintiff failed to exhaust properly his administrative remedies regarding his claim of deliberate indifference to his medical needs. *See Bock*, 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). The court, therefore, concludes that Plaintiff's medical claims are subject to dismissal as Plaintiff failed to exhaust properly an administrative remedy available to him which is a precondition to proceeding in this court on these claims. *Woodford*, 548 U.S. at 87–94. *See Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) (footnotes omitted) (inmate's "federal lawsuits . . . properly dismissed with prejudice" where previously available administrative remedies had become unavailable). The medical Defendants' motion to dismiss for failure to exhaust is due to be granted. *Woodford*, 548 U.S. at 87-94.

### C. The Correctional Defendants

Plaintiff transferred to Bullock on August 22, 2013. It was an inauspicious beginning as shortly after he arrived, Plaintiff alleges Defendant Whitley subjected him to excessive force by

grabbing him by the throat, choking him, and then picking him up and throwing him head first onto the concrete. Plaintiff maintains the assault occurred after he told Defendant Whitley and Warden Mason he would sue them for throwing away his legal work and destroying his religious books. At the time of the assault, Plaintiff was handcuffed and states he was not violent, showing resistance, and had not spit on Defendant Whitley. He alleges the assault resulted in "busting [his] head open, and caused memory loss, headaches, blackouts, seizures, and injury to his right eye." Doc. #s 1, 3.

The correctional Defendants' evidence reflects Plaintiff arrived at Bullock with various items of personal property, which included two large paper bags of paper weighing eighteen pounds and an overstuffed laundry bag. Plaintiff informed guards at the back gate that the papers were his legal material. Plaintiff was escorted to Warden Mason's office for verification of his claim that the papers were legal material.  The Warden advised Plaintiff he could only keep legal material for pending court cases. Plaintiff explained he had no legal cases pending but the papers contained his notes and strategy.  Warden Mason informed Plaintiff he could not retain the two large bags of paper which constituted a fire hazard and that excess documents must be inventoried and he had thirty days in which to send the property home or it would be destroyed. Plaintiff took umbrage to this course of action and began screaming at the correctional officials. As she grabbed her pepper spray, Warden Mason instructed a correctional officer to handcuff Plaintiff. Warden Mason then called the Shift Commander's Officer and ordered the sergeant on duty to report to her office during which time Plaintiff continued screaming and yelling obscenities. Defendant Whitley and Sergeant Bennett ran to Warden Mason's office, grabbed Plaintiff, and escorted him out the Warden's office. After exiting the Warden's office, Defendant Whitley states Plaintiff began to resist and pull away while continuing to yell obscenities. Plaintiff then attempted to head

13

butt Defendant Whitley and spit in his face. Defendant Whitley grabbed Plaintiff by his shirt collar. Plaintiff pulled away and Defendant Whitley grabbed his shoulder and took him to the floor during which Plaintiff hit his head on a corner of a concrete wall. Defendant King ran to assist Defendant Whitley and Sergeant Bennett by placing leg irons on Plaintiff who was attempting to kick the guards.  The three officers escorted Plaintiff to the medical unit for treatment of his injuries after which he was released and placed in segregation for review of his custody and pending disciplinary action for several major rule violations. Doc. # 34, Exhs. A, B, E, G; Doc. # 35, Exh. H-1.

Plaintiff's medical records reflect that on August 22, 2013, medical staff assessed him regarding his complaint he had been picked up and thrown on to something hard while handcuffed. Medical personnel observed a three centimeter laceration on the right side of Plaintiff's head which required stitches. He also had reddened areas above his right eye and lip. Dr. Siddiq observed no traumatic or concussive head injury of any kind but ordered x-rays of Plaintiff's head and chest as a precaution. Doc. # 23, Siddiq Affidavit, Exh. A at 45, 46; Doc. # 35, Exh. H-2; Doc. # 36, Exh. H; Doc. #37, Exh. H at 1.

### i. Absolute Immunity

To the extent the alleged constitutional violations Plaintiff lodges against the correctional Defendants are made against them in their official capacities, they are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996).  Alabama has not waived its Eleventh Amendment

immunity, see *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.   Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the correctional defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity.   *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

**ii. Excessive Force**

**a. Qualified Immunity**

Regarding Plaintiff's excessive force claim lodged against Defendant Whitley in his individual capacity, Defendant Whitley argues he is entitled to qualified immunity.   However, "'there is no room for qualified immunity' in Eighth Amendment . . . excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008) (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)), *overruled on other grounds as recognized by Randall v. Scott,* 610 F.3d 701, 709 (11th Cir. 2010)).   Thus, a qualified immunity defense is not available when a plaintiff properly pleads the use of excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002); *see also Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). Accordingly, this court will consider whether Plaintiff's allegation that Defendant Whitley used

excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

### b. Individual Capacity Claim

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). Regarding the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* (internal quotations omitted). Not every malevolent touch by a prison official amounts to a deprivation of constitutional rights. *Id.* at 9. Summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, have been placed in jeopardy. *Whitley*, 475 U.S. at 312.

> In extending *Whitley* to all cases involving allegations of force, the *Hudson* Court reasoned:
>
> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

503 U.S. at 6 (citations omitted). With these concerns in mind, the *Hudson* Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: 1) the extent of the injury suffered by the inmate; 2) the need for the

application of force; 3) the relationship between the need and the amount of force used; 4) the threat reasonably perceived by the prison official; 5) any efforts made to temper the severity of a forceful response. *Id*. at 7-8. "From consideration of such factors, 'inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.' *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)." *Skrtich*, 280 F.3d at 1300-1301. The *Hudson* Court clarified that the extent of the injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." 503 U.S. at 7. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury" *Wilkins v. Gaddy*, 556 U.S. 34, 38 (2010*); see also Hall v. Bennett*, 447 F. App'x 921, 923-24 (11th Cir. 2011) (unpublished) (per curiam) (*citing Wilkins*, 559 U.S. at 37-38) ("[W]hile [plaintiff's] medical reports did not note any obvious injuries, we are mindful of the fact that the focus of the inquiry is on the nature of the force applied, not the extent of the injury."). Recognizing that the relief in such a case could be slender, the Court added that "even if [the inmate] succeeds, the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover." *Wilkins*, 559 U.S. at 40.

Even though the correctional Defendants dispute the version of events presented by Plaintiff as described above, the court is required at this stage of the proceedings to view the facts in the light most favorable to him and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014). From that perspective, Plaintiff maintains Defendant Whitley subjected him to an unjustified use of excessive

force when he was handcuffed and exhibiting no violence or resistance.  He maintains Defendant

Whitley acted maliciously and sadistically when he grabbed him by the neck, choked him, and

slammed him to the concrete for no reason other than to cause him harm because at the time of the

incident Plaintiff posed no threat to either Defendant Whitley, other correctional personnel, or the

security of the facility. Doc. #s 1, 3, 50 & Inmate Affidavits.  As explained, Defendant Whitley

denies Plaintiff's allegations regarding the use of force and maintains that the only force used was

that which was necessary and appropriate to maintain control over Plaintiff who was

argumentative, acting aggressively and belligerently, and attempting to head butt the guard and

spit on him. Doc. # 34, Exh. B; Doc. # 35, Exh. H-1 at 11-12; Doc. # 37, Exh. H-1 at 5-6. Similar

to the scenario in *Hall v. Bennett, supra*, this case presents "two competing, contradictory stories

of what happened," and this court cannot "improperly weigh[ ] the witnesses' credibility by

favoring [Defendant Whitley's] account over [Plaintiff's]." *Id*. at 924.

Viewing the facts in the light most favorable to Plaintiff, as the court must at this stage in

the proceedings, the court concludes Defendant Whitley is not entitled to qualified immunity as

Plaintiff has alleged facts sufficient to survive this Defendant's motion for summary judgment

regarding the excessive force claim lodged against him.  *Skrtich*, 280 F.3d at 1301.  Specifically,

disputed issues of material fact exist regarding the use of force and whether Defendant Whitley

acted "maliciously and sadistically" to cause harm.  Consequently, the motion for summary

judgment regarding the excessive force claim presented against Defendant Whitley in his

individual capacity is due to be denied.

### iii. Defendant Thomas

Plaintiff names former Commissioner Thomas as a defendant. A careful review of the

complaint reflects that Plaintiff makes no allegations against this individual. To the extent Plaintiff

names Commissioner Thomas as a defendant based on his supervisory position, supervisory personnel cannot be liable under § 1983 for a constitutional violation of one of their subordinates via a theory of *respondeat superior* or on the basis of vicarious liability. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-95 (1978) (doctrine of *respondeat superior* is inapplicable to § 1983 actions); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability); *see also Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) ("a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing."). Moreover, as explained, other than naming Commissioner Thomas as a defendant, Plaintiff makes no allegations against him nor does he indicate this defendant was personally involved in the constitutional violations about which he complains. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (*per curiam*) (court properly dismissed *pro se* complaint that was silent as to defendant except for his name appearing in caption). Accordingly, Defendant Thomas is due to be granted summary judgment.

### iv. Defendant Jackson

Plaintiff alleges in the amendment to his complaint that on August 24, 2013, Defendant Jackson ordered Nurse Moore to provide him (Plaintiff) with no medical care and to make it appear he refused treatment even though Plaintiff alleges he "clearly request[ed] treatment after several blackouts." Doc. #43. Defendant Jackson maintains that on August 24, 2013, he received a request

19

from another correctional officer to report to Plaintiff's cell. He arrived at approximately 12:30 p.m. where he observed Plaintiff lying on the floor. Plaintiff did not respond to Defendant Jackson's order to get up. The guard then entered Plaintiff's cell, shook him, and ordered him to get up. Plaintiff stood up and in response to Defendant Jackson's query about what had happened, Plaintiff stated he did not know and asked where he was. Defendant Jackson and another correctional officer escorted Plaintiff to the infirmary where he was examined by Nurse Moore. The guards remained in the room to provide security. Nurse Moore conducted a complete physical examination of Plaintiff but found no apparent injury, trauma, or distress and Plaintiff denied being in any pain. The nurse advised Plaintiff to return to the infirmary if he needed further medical attention and released him to DOC custody at which time he was escorted back to his cell. Doc. # 23, Exh. A at 43, 44; Doc. # 65, Exhs. J, K; Doc. # 66, Moore Affidavit.

To prevail in a suit based on an Eighth Amendment claim about medical attention, a prisoner must show at a minimum that prison or medical officials have acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002). A prison or medical official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that the inmate faces a substantial risk of serious harm

20

and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Where an inmate complains of delay in medical treatment, he has the burden of establishing that he suffered a significant effect from the delay. *See Hill*, 40 F.3d at 1188.

Plaintiff maintains that Defendant Jackson told Nurse Moore to not treat him and, instead, indicated Plaintiff was not cooperating during the medical exam because he was "faking and lying" to get Defendant Whitley in trouble due to Plaintiff's excessive force allegation against him. Doc. # 72. Plaintiff's opposition material includes an affidavit from inmate Jeremy Alexander who asserts Defendant Jackson left Plaintiff lying on the floor of his cell for an hour before calling medical. Doc. # 50 at 6.  Defendant Jackson denies Plaintiff's allegation and states he reported to Plaintiff's cell after being summoned there by another correctional officer and observed Plaintiff lying unresponsive on the floor. After entering Plaintiff's cell, Defendant Jackson roused Plaintiff to his feet and then proceeded to escort him to the infirmary for a medical evaluation. Medical staff examined Plaintiff and, finding no injury, distress, or trauma, released him to DOC custody with instructions to return to the medical unit if his condition changed.  Doc # 65, Exhs. J, K; Doc. # 66, Moore Affidavit; *see also* Doc. # 23 at 42-44.

The evidentiary materials filed by defendants regarding the material facts surrounding the August 24, 2013, incident, show his condition was appropriately evaluated and treated by prison medical staff. Plaintiff has produced no evidence he suffered any detrimental effect from any alleged delay in providing him with medical treatment. While the record shows Defendant Jackson was aware of the fact that Plaintiff was initially found lying unresponsive on the floor of his cell, the evidence falls far short of demonstrating the degree of "deliberate indifference" to Plaintiff's medical needs required to demonstrate Defendant Jackson knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by intentionally or deliberately delaying his ability

to receive necessary medical treatment or by interfering with his ability to access such treatment. *See Farmer*, 511 U.S. 825. Additionally, the affidavits submitted by the medical and correctional Defendants regarding the incident are corroborated by the contemporaneously compiled objective medical records. *See* Doc. # 23, Exh. A at 43-44, Doc. # 65, Exh. J; Doc. # 66, Moore Affidavit. The law is well settled that "[s]elf serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records," and they certainly do not do so here. *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)).  Defendant Jackson's motion for summary judgment on Plaintiff's Eight Amendment claim is due to be granted.

### v. Access to Court Claim

Plaintiff complains that on August 22, 2013, Defendant Mason threw his legal work in the trash. Doc. #s 1, 3. Defendant Mason denies ever throwing legal work away. She maintains that Plaintiff arrived at Bullock with two large paper bags full of paper and an overstuffed laundry bag. As explained, Warden Mason informed Plaintiff he could only retain legal work for pending cases and excess documents, which were a potential fire hazard, would be inventoried and he had thirty days to send the property home at his expense or it would be destroyed. Doc. # 34, Exh. A.

To demonstrate a violation of the First Amendment right of access to the courts, Plaintiff must show that "an actionable claim . . . which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Lewis v. Casey*, 518 U.S. 343, 356 (1996) (*citing Bounds v. Smith*, 430 U.S. 817, 828 (1977)). The Supreme Court explained in *Bounds* that "[t]he fundamental right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate legal assistance from persons trained in the law." *Id*. 430 U.S.

22

at 838.  However, an inmate's contentions of deprivation of access to the courts must show actual prejudice or harm as a "constitutional prerequisite." *Lewis*, 518 U.S. at 351; *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court");  *see also Chandler v. Baird*, 926 F.2d 1057, 1063 (11th Cir. 1991) ("both policy and the prevailing state of the law require an inmate to articulate facts indicating some prejudice such as being unable to do timely research on a legal problem or being procedurally or substantively disadvantaged in the prosecution of a cause of action"). Without a showing that the lack of access frustrated efforts to pursue a non-frivolous legal claim, an inmate has no standing to challenge the policy or practice in question. *Lewis*, 518 U.S. at 352-54; *Bass v. Singletary*, 143 F.3d 1442, 1444 (11th Cir. 1998).  Thus, the right of access to the courts does not extend to all legal claims, only to those in which an inmate can demonstrate actual injury from an inability to challenge specific non-frivolous legal claims relating to the fact or condition of a prisoner's confinement. *Lewis*, 518 U.S. at 355; *see also Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998).

While Plaintiff claims Defendant Mason destroyed his legal work, he has failed to show he was so hindered in his efforts to pursue a non-frivolous legal claim to such a degree he experienced adverse consequences or an actual injury from the alleged deprivation.  *Lewis*, 518 U.S. at 349. Plaintiff utterly and completely fails to come forward with any probative evidence that the actions about which he complains deprived him of the capability of pursing claims before federal or state courts.  Because Plaintiff's allegation against Defendant Mason regarding a denial of access to the courts articulates no "actual injury" accruing to him, she is due to be granted summary judgment on this claim.

### vi. Property/First Amendment Claim

Plaintiff claims Defendant Mason tore up his bible (Diamond Sutra) and threw it in the trash. Plaintiff advised Warden Mason he is a Buddhist, the bible was the only book he had, and he needed his striptures [sic] to which she responded "I don't give a fu*# about Buddha or you," and "to hell with you and your religion (welcome to Bullock)." Plaintiff alleges taking away his scriptures effected his efforts at rehabilitation and his ability to maintain a balance of mind. Doc. # 1 at 3, 5.

Defendant Mason denies Plaintiff's allegations and states she has never thrown away or torn up a bible, a religious book, or a Diamond Sutra. She further denies having any discussion with Plaintiff regarding religion, his religious beliefs, or his religious affiliations. Doc. # 34, Exh. A.

Although it is not entirely clear from the evidence what papers, books, religious or otherwise, Plaintiff had with him when he arrived at Bullock,[5] to the extent his assertions amount to a claim that Defendant Mason confiscated and/or destroyed his property in violation of his due process rights, the court finds that under no set of facts is he entitled to relief. When property is taken or destroyed through such an unauthorized act of a state employee, there is no claim for violation of due process if an adequate post-deprivation remedy exists under state law. *Hudson v. Palmer*, 468 U.S. 517, 531–36 (1984); *Parratt v. Taylor*, 451 U.S. 527, 535–44 (1981).

> If [Plaintiff's property] was not returned because of [Defendant's] negligence, there has been no unconstitutional deprivation of property. *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (negligent loss of property does not rise to the level of a constitutional violation.) If [Defendant] intentionally refused to return the [property], plaintiff has not alleged a constitutional violation. In *Hudson v. Palmer* the Court ruled that an 'unauthorized intentional deprivation of property

---

[5] The correctional Defendants submitted three inmate property sheets, one of which is not legible except for a handwritten notation which reflects "(5) books." The other two inmate property sheets, both dated August 22, 2013, contain varying information including notations that Plaintiff's property included, among other things, various books including a bible and a scientology bible. Doc. # 35, Exh. H at 8, 9, 10.

> by a state employee does not constitute a violation of the Due Process Clause . . . if a meaningful post-deprivation remedy for the loss is available.'  104 S.Ct. at 3202, 82 L.Ed.2d at 407.  It is essential to [the instant] complaint that it allege that [Defendant] acted without authorization.  If [Defendant] was acting pursuant to authorization, [her] actions would be within the outer perimeter of [her] duties and would not have violated any clearly established constitutional right and therefore [she] would be immune from suit.  *See Scheuer v. Rhodes*, 416 U.S. 232, 247-48, 94 S.Ct. 1683, 1691-92, 40 L.Ed.2d 90 (1974); *Flinn v. Gordon*, 775 F.2d 1551, 1553 (11th Cir. 1985).  Only if the complaint is construed as alleging that [Defendant] was acting in bad faith outside the scope of [her] duties can it evade the doctrine of official immunity.

*Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986).  *See also Holloway v. Walker*, 790 F.2d 1170, 1173-74 (5th Cir. 1986) (finding no breach of federally guaranteed constitutional rights, even where a high level state employee intentionally engages in tortuous conduct, as long as the state system as a whole provides due process of law); *Myers v. Klevenhagen*, 97 F.3d 91, 94-95 (5th Cir. 1996) ("the *Parratt [v. Taylor*, 451 U.S. 527 (1981)]/*Hudson [v. Palmer*, 468 U.S. 517 (1984)] doctrine protects the state from liability for failing to provide a pre deprivation process in situations where it cannot anticipate the random and unauthorized actions of its officers."  The complainant bears the burden of establishing that the state's post deprivation remedy is inadequate).

The State of Alabama, through its Board of Adjustment, provides a meaningful post-deprivation remedy for Plaintiff to seek redress for the loss of his property.  *Ala. Code* § 41-9-60 *et seq*. (1982).  Because of this adequate state remedy, Plaintiff's allegation that Defendant Mason violated his due process rights by improperly confiscating and/or destroying his personal property, whether such resulted from negligence or an intentional act, fails to state a claim on which relief may be granted.

To the extent Plaintiff attempts to state a First Amendment freedom-of-religion claim because of Defendant Mason's actions, he is likewise entitled to no relief because he does not

allege much less indicate that the destruction and/or confiscation of his property restricted the exercise of his religious beliefs. *Turner v. Safely*, 482 U.S. 78 (1987); *Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996) (*citing O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987) (inmate's free exercise right does not "depend upon his ability to pursue each and every aspect of the practice of his religion"). Therefore, Plaintiff's challenge to Defendant Mason's conduct, without more, does not establish that she prevented him from practicing his religion. *See O'Banion v. Anderson*, 50 F. App'x 775, 776 (7th Cir. 2002) (plaintiff could not salvage non-actionable due process claim for unauthorized confiscation of religious property by asserting it as a Free Exercise claim absent a showing that the confiscation restricted the exercise of his religious beliefs). Defendant Mason is entitled to summary judgment on these claims.

### vii. Conspiracy/Verbal Abuse Claim

Plaintiff alleges Defendants Mason, Whitley, and Randolph conspired to cause him bodily harm. To support this claim, Plaintiff alleges Defendant Mason offered inmates in segregation an incentive to harm him, Defendant Whitley threatened to put him in a cell with an inmate who would "(f**k) [him] in [his] (a**), and Defendant Randolph, after unsuccessfully attempting to extort payment from Plaintiff for protection from harm, told him "I hope they kill your faggot ass in here." Doc. # 1.   Plaintiff also alleges that Defendants King and Jenkins conspired with Defendant Whitley to cover up his use of force by perjuring themselves and falsifying institutional records regarding incident. Doc. # 3.

"Conspiring to violate another person's constitutional rights violates section 1983. *Dennis v. Sparks*, 449 U.S. at 27, 101 S.Ct. at 186 (1980); *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988), *overruled in part on other grounds by Whiting v. Traylor*, 85 F.3d 581, 584 n.4 (11th Cir. 1996)." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002).  "To prove

26

a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990), *cert. denied*, 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991). . . . [T]he linchpin for conspiracy is agreement...." *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1122 (11th Cir. 1992). In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, . . . [he] must [produce] some evidence of agreement between the defendants. . . . For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'" *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe*, 279 F.3d at 1283-1284. Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Defendants deny conspiring to violate Plaintiff's constitutional rights and, instead, argue they acted appropriately in addressing Plaintiff's negative behavior. Doc. # 34, Exhs. A, B, C, E, F. Further, it is undisputed that Plaintiff was not harmed by another inmate during his incarceration at Bullock. *Id.* Exh. A.

The court has carefully reviewed the pleadings filed by Plaintiff. There is a total lack of evidence to support Plaintiff's contention that the named correctional defendants engaged in various conspiratorial acts against him. Specifically, Plaintiff presents no evidence which demonstrates these defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy." *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468.). Plaintiff's assertions are self-serving, purely conclusory allegations which fail to assert those material facts necessary to sufficiently plead a conspiracy between these defendants. *Harvey*, 949

F.2d 1133; *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984) ("It is not enough to simply aver in the complaint that a conspiracy existed."). Thus, their motion for summary judgment on Plaintiff's conspiracy claim is due to be granted. *Bailey*, 956 F.2d at 1122.

To the extent Plaintiff's allegations described above assert a claim that Defendants Whitley and Randolph subjected him to verbal threats and/or abuse, he is entitled to no relief. Derogatory, demeaning, profane, threatening, or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation. *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (mere verbal taunts, despite their distressing nature, directed at inmate by jailers do not violate inmate's constitutional rights); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2006) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under §1983."); *Gaul v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (Eighth Amendment trivialized by assertion that mere threat constitutes a constitutional wrong and threatening to commit an act prohibited by the Constitution is not equivalent to doing the act itself); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (mere name-calling did not violate inmate's constitutional rights).

### D. Criminal Charges

To the extent Plaintiff requests federal and/or state criminal charges be brought against the correctional defendants for the conduct about which he complains, he is entitled to no relief. *See* Doc. # 1 at 4. Plaintiff does not have a constitutional right to see his alleged persecutors punished for their conduct. "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Leeke v. Timmerman*, 454 U.S. 83 (1981).

### III.  CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.   Plaintiff's request for equitable relief (Doc. # 1) be DISMISSED as moot;

2.   The motions to dismiss filed by Defendants Siddiq and Moore (Doc. #s 23, 66) be GRANTED to the extent these Defendants seeks dismissal of this case due to Plaintiff's failure to properly exhaust an administrative remedy prior to filing this case;

3.   This case be DISMISSED with prejudice against Defendants Siddiq and Moore under 42 U.S.C. § 1997e(a) for Plaintiff's failure to exhaust an administrative remedy.

4.   Defendants Thomas's, Randolph's, King's, Mason's, Jenkins's and Jackson's motions for summary judgment (Doc. #s 34, 65) be GRANTED;

5.   Defendant Whitley's motion for summary judgment (Doc. # 34) regarding the claim for monetary damages lodged against him in his official capacity be GRANTED as this Defendant is entitled to absolute immunity from this claim;

6.   Defendant Whitley's motion for summary judgment (Doc. # 34) regarding Plaintiff's Eighth Amendment excessive force claim lodged against him in all aspects of his individual capacity be DENIED;

7.   This case be set for a set for a jury trial before the District Judge assigned to this case on Plaintiff's excessive force claim against Defendant Whitley his individual capacity.

It is further

ORDERED that **on or before August 31, 2016**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 18th day of August 2016.

/s/   Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE